IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2014 Session

**JAMES ALFRED REED, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Monroe County**
**No. 12378     Amy A. Reedy, Judge**

———————————

**No. E2014-00227-CCA-R3-PC - Filed September 4, 2014**

———————————

A Monroe County jury convicted the Petitioner, James Alfred Reed, Jr., of one count of the sale of one-half gram or more of cocaine within 1000 feet of a school and one count of the sale of less than one-half gram of cocaine within 1000 feet of a school. The trial court sentenced him as a Range II, multiple offender and ordered the Petitioner to serve an effective sentence of forty years. The Petitioner appealed, and this Court affirmed the judgments of the trial court. *State v. James Alfred Reed, Jr.*, No. E2010-01138-CCA-R3-CD, 2011 WL 2766766, at *5 (Tenn. Crim. App., at Knoxville, July 18, 2011), *perm. app. denied* (Tenn. Dec. 13, 2011). The Petitioner subsequently filed a petition for post-conviction relief in which he alleged that his trial counsel was ineffective for failing to file a motion to compel the State to disclose its confidential informant at trial and that his *Momon* hearing was improperly conducted. The post-conviction court dismissed the petition after a hearing. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., J., and TIMOTHY L. EASTER, SP. J., joined.

W. Tyler Weiss, Madisonville, Tennessee, for the Appellant, James Alfred Reed, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Steven Bebb, District Attorney General; Heather Higginbotham, Assistant District Attorney General, for the Appellee, State of Tennessee.

1

# OPINION
## I. Facts
### A. Trial

This case arises from the Defendant's sale of cocaine near Vonore Elementary School in Vonore, Tennessee. On direct appeal, this Court summarized the underlying facts of the case as follows:

> At the trial, Vonore Police Lieutenant Robby Lovingood testified that he investigated narcotics cases. He said that on June 20, 2008, a confidential informant called him and said, "I've got a guy that sells crack cocaine." He said the alleged dealer lived in Blount County. He said that he called the Blount County Police to see if they were interested in investigating but that they declined because they were too understaffed. He said that he asked the informant if the transaction could be in Vonore and that the informant agreed. He said they agreed on a location they previously used because it was on the highway with a good surveillance spot.
>
> Lieutenant Lovingood testified that he and the confidential informant met at the WilSav Drug Store in Vonore off Highway 411 near Vonore Elementary School at about 8:00 p.m. He said that he was in contact with the informant before arriving at the scene but that he did not see the [Petitioner] until he arrived. He said he wore a body wire and took currency that he photocopied for identification purposes. He said he paid the [Petitioner] $220 for the crack cocaine.
>
> Lieutenant Lovingood testified that he thought the confidential informant and the [Petitioner] arrived in a van. He said he and the informant arrived at about the same time, got out of their vehicles, and greeted each other. He said he asked the informant if the man in the van was the one selling crack. He said that he entered the driver's seat of the van and that the [Petitioner] was the only person in the van. He said he did not see where the informant went during that time.
>
> Lieutenant Lovingood testified that he did not give his real name or tell the [Petitioner] he was a police officer. He said he pointed out Vonore Elementary School and told the [Petitioner] he was a teacher there. He said that he asked if the [Petitioner] had what he needed and that the [Petitioner] looked at and pointed his finger at the floorboard. He said the [Petitioner] would not speak. He said he looked at where the [Petitioner] pointed and saw

2

a plastic bag containing crack cocaine.

Lieutenant Lovingood testified that he and the [Petitioner] left the parking lot at about the same time. He said he put the crack cocaine in a cellophane bag, sealed it, took it to the Vonore Police Department, placed the cellophane bag inside an evidence bag, put it in the evidence locker, and had it transported to the Tennessee Bureau of Investigation (TBI). He said that Vonore Police Officer Shane Carr transported items to the TBI laboratory for the department and that to his knowledge, Officer Carr transported the evidence bag. He identified the examination request he completed for the TBI laboratory and the TBI laboratory's report and said that both were dated June 20, 2008.

Lieutenant Lovingood testified that on June 26, 2008, the confidential informant contacted him and arranged a second meeting. He said he met the informant and the [Petitioner] between 9:00 and 9:30 p.m. at the Wil-Save Drug Store in Vonore. He said the informant drove the [Petitioner] to the meeting in the same van as on June 20. He said he photocopied the currency for identification and wore a body wire. He said that the informant left before the transaction and that he was alone in the van with the [Petitioner]. He said that he left $80 in the van and that he left the van with a plastic bag containing crack cocaine. After he left the van, other police officers took the [Petitioner] into custody.

Lieutenant Lovingood testified that he took the cocaine to the Vonore Police Department, placed it in an evidence bag, and put it in the evidence locker. He identified the evidence bag and said Officer Carr transported the evidence bag to the TBI laboratory. He identified the June 26, 2008 examination request and the laboratory report he received on the sample.

Lieutenant Lovingood testified that during one of the two transactions, the [Petitioner] told him that if he set the money on the floor, it would not be a "sell and delivery." He said he was not sure if this conversation took place during the first or second transaction but that the tape would provide that information. He said he put the money on the floorboard and took the crack cocaine. He said that when he left the van, the [Petitioner] was the only person inside.

Lieutenant Lovingood testified that students attended Vonore Elementary School daily and that it was within 1000 feet of the Wil-Save Drug

3

Store. He said that he had measured the distance but that he did not remember the exact measurement. He said the store property connected to the school property.

On cross-examination, Lieutenant Lovingood testified that he was not with Officer Carr when Officer Carr took the evidence to the TBI laboratory. He said that he was trained to conduct undercover drug operations but that no training existed for working with confidential informants. He agreed he investigated informants before working with them. He agreed that some informants tried to help themselves after being charged with crimes and that other informants were paid money by law enforcement. He said the informant in this case was paid for both transactions. He did not remember how much the informant was paid but said the department typically paid $100 for an "indictment bust."

Lieutenant Lovingood testified that the confidential informant also worked with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Drug Enforcement Administration (DEA). He said that the informant called him a couple of times a week when the informant found a methamphetamine laboratory or someone selling drugs. He said that he worked with the informant for slightly less than a year and that the informant set up other drug "busts," although he did not remember if those were before the [Petitioner's] arrest. He said that he did not investigate the informant's employment but that the informant told him he worked in construction. He said he did not administer a drug test on the informant. He said that he met with the informant in person many times but that he only talked to him about the [Petitioner] on the telephone.

Lieutenant Lovingood testified that he recorded transactions using either a body wire or a digital recorder. He said that the body wire was a little box with an antenna and wire running from it, that he could hide it in his clothes or hand, and that it picked up the conversation of the person wearing the wire and those around him. He said that the transmission from the body wire could be heard in "real time" from about a quarter-mile away but that weather and background noise could affect clarity. He said that he also had digital recorders but that he did not have enough for all cases. He said that he had a camcorder but that he could only use it to record a transaction if he could hide the camera.

Lieutenant Lovingood testified that both transactions with the

[Petitioner] occurred in the evening but that it was not "pitch dark." He agreed the only information he knew about the [Petitioner] before the first transaction was what the confidential informant told him. He said he knew the [Petitioner] did not have a driver's license and would not drive to the meeting. He said that he did not investigate the [Petitioner's] background until after the arrest and that then he only investigated the [Petitioner's] criminal history.

Lieutenant Lovingood testified that he did not monitor any conversations between the confidential informant and the [Petitioner]. He said he did not have an opportunity to search the informant's van before either transaction. He said he set the ground rules with the informant, including the requirement that the informant leave before each transaction. He agreed it was ideal to search an informant and his vehicle before a transaction to ensure that any drugs found did not belong to the informant. He said he could not search the informant before the transactions in this case because he did not have jurisdiction to search people and arrange deals in Blount County.

Lieutenant Lovingood testified that June 20, 2008, was a Friday and that June 26 was a Thursday. He agreed the elementary school was not in session for the summer. He said that he had used the Wil-Save Drug Store parking lot for other drug transactions, that he had measured the distance from the store to the school at under 1000 feet, and that no fence separated the store and the school.

Lieutenant Lovingood testified that the confidential informant, the [Petitioner], and he did not discuss either transaction when all three were together. He said that he did not remember exactly what he and the informant said when they greeted each other but that he remembered pointing toward the [Petitioner], who was still in the van, and asking if the informant had him "hooked up." He said he told the [Petitioner] he was the informant's cousin. He said that during the first transaction, he told the [Petitioner] the crack cocaine was for his wife or girlfriend in order to keep the [Petitioner] from asking him to smoke some.

Lieutenant Lovingood testified that he searched the confidential informant and the informant's van after the second transaction but that he did not search after the first transaction. He said the police ordered the informant and the [Petitioner] to take off their shoes in order to search them thoroughly. He said that when the [Petitioner] was arrested, the [Petitioner] had only his clothes, a marijuana pipe, and a cast on his arm. He said that the [Petitioner]

5

had no money in his possession at the time of the arrest and that the police found no additional drug paraphernalia. He said that the cocaine in the first transaction weighed 1.3 grams and that the crack cocaine in the second transaction weighed 0.3 grams.

Lieutenant Lovingood testified that he did not recover the money after the first transaction but that he recovered the money from the van floorboard near the passenger seat after the second transaction. He said that after the first transaction, he paid the confidential informant by sending an officer to him with the money. He said that after the second transaction, he "took down" the informant as well as the [Petitioner] to make it look like the informant did not set up the [Petitioner]. He agreed the informant had a cell phone and had met him in Vonore before. He said that all he knew about where the drugs originated was that they came from Alcoa in Blount County.

On redirect examination, Lieutenant Lovingood testified that a "buy bust" referred to when the police arranged a controlled purchase, in which the officer buying the drugs gave a take-down signal to other officers, who then took the suspect into custody. He said the [Petitioner's] arrest on June 26, 2008, was the result of a buy bust. He said he decided to arrange the buy bust for the second transaction because he wanted to show that the [Petitioner] sold the drugs more than once but also because he did not want to waste drug fund money by arranging additional transactions. He said he also needed to arrange the drug bust to obtain complete identification of the [Petitioner] that he could not obtain from the confidential informant. He said that he was the designated buyer for the buy bust and that the informant was not involved in the transaction. He agreed he arranged each transaction to be between the [Petitioner] and him only.

On recross-examination, Lieutenant Lovingood testified that he often had confidential informants purchase drugs for him because many suspects in his area recognized him. He said he searched informants before they purchased drugs in those situations. He said that in this case, the [Petitioner] did not know him, which allowed him to speak with the [Petitioner] about the drugs and purchase the drugs. He agreed he did not record what happened with the confidential informant before the transactions.

. . . .

Michael Bleakley, an expert in the field of forensic drug chemistry,

6

testified that he worked with the TBI Crime Laboratory in Knoxville and that he tested the substance from the first transaction. He said the substance weighed 1.3 grams. He said he tested the substance using UV spectrophotometry and infrared spectrometry, which revealed that the substance was cocaine base. He said that he tested the substance from the second transaction, that the substance weighed 0.3 grams, and that tests revealed it was cocaine base.

*Reed*, 2011 WL 2766766, at *1-5. The jury convicted the Petitioner of the sale of one-half gram or more of cocaine within 1000 feet of a school and the sale of less than one-half gram of cocaine within 1000 feet of a school. The trial court imposed an effective sentence of forty years of confinement. *Reed*, 2011 WL 2766766, at *5.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel because his trial counsel, ("Counsel"), failed to file a motion to compel the State to disclose the identity of the confidential informant present during the commission of the crime. The Petitioner further claimed that the *Momon* hearing conducted during his guilty plea hearing was improper and that Counsel was ineffective for failing to object to the way the hearing was conducted.[1] The post-conviction court held an evidentiary hearing, where the parties presented the following evidence:

The Petitioner testified that he was convicted for drug sales that occurred on June 20, 2008, and June 26, 2008, in Monroe County. He stated that he was living in Blount County with his mother at the time of the offenses. The Petitioner testified that on June 20, 2008, the informant picked him up from his mother's house and drove him to meet Officer Lovingood at a store in Monroe County. He agreed that he and the informant "smoked crack" on their drive to meet Officer Lovingood and stated that the informant kept the drugs in his shirt pocket during the drive. The Petitioner stated that the informant told him that he was taking a "package" to his daughter's boyfriend. The Petitioner stated that, upon arrival at the store, the informant got out of the car and placed the drugs on the floorboard of the vehicle. The Petitioner stated that the informant told him to give the drugs to Officer Lovingood when he approached the car, to which the Petitioner responded, "I'm not passing nothing or receiving nothing from nobody."

The Petitioner testified that Officer Lovingood got into the informant's vehicle and asked the Petitioner "where the dope was at[.]" Officer Lovingood then picked the drugs up

---

[1]This issue is not being raised in this appeal.

7

from the floorboard and placed cash in its place. The informant got back in the van, counted the money, and then he drove the Petitioner home.

The Petitioner stated that on June 26, 2008, the informant picked up the Petitioner from his mother's house to take "something" to the informant's daughter's boyfriend. The informant took the Petitioner to Vonore, Tennessee and stopped outside the "Quicksave or Quickway Market" until Office Lovingood walked up to the vehicle. The Petitioned stated that again the informant left drugs on the floorboard of the vehicle and exited the car. Officer Lovingood got in the car and asked the Petitioner if he had brought "anything." Officer Lovingood took the drugs that were on the floorboard and left money in its place. The Petitioner stated that police officers then took him into custody. The Petitioner told the officers he had nothing to do with the drugs. The Petitioned testified that he had not spoken with the informant since that day.

The Petitioner testified that Counsel was appointed to represent him in General Sessions Court. He stated that he told Counsel about the informant and asked Counsel to subpoena him. He stated that, during Counsel's representation of him, Counsel did not "try to build a case." The Petitioner told Counsel that he had been "brought into a situation that was controlled out of [his] means and that [he] didn't bring no dope into no county and especially into no school zone." The Petitioner testified that he told Counsel to file a motion to compel the State to disclose the identity of the informant but that Counsel did not believe the State would reveal his identity. He stated that Counsel "made some kind of mention . . . during trial and it go[t] rejected . . . ."

On cross-examination, the Petitioner agreed that, when he rode with the informant to deliver the "package" to the informant's daughter's boyfriend, the Petitioner was "aware" that the package contained drugs. He stated that he wanted a "free high," so he agreed to ride with the informant for that reason. The Petitioner said that Counsel told him how the trial would go and answered all of his questions, but she did not object when the State asked contradictory questions and "let the case go on." The Petitioner recalled that Counsel told him it was in his best interest not to testify and that Counsel said the Petitioner's prior convictions for sale and delivery of drugs would be used against him. He stated that he was "agreeable" to not taking the stand to testify.

On redirect-examination, the Petitioner stated that he wrote a letter to Counsel's supervisor saying that Counsel had a lack of interest in his case and that a false case against him was being built.

Counsel testified that she was employed by the Public Defender's Office and was appointed to represent the Petitioner. She stated that she represented him during a

preliminary hearing. Counsel testified that she spoke with the Petitioner and his family more than once about the facts of his case and that they identified issues for further investigation. One of the issues that the Petitioner and his family raised was that the confidential informant "was selling drugs in their community." Counsel stated that she had discussed the issue of "entrapment" with the Petitioner and also the Petitioner's defense that the drugs belonged to the informant. The Petitioner maintained that he was "stuck in the middle" of the drug purchase. Counsel said that she explained to the Petitioner that she was unable to find evidence to support that defense because there was

> an audio recording where [the Petitioner] was the one conversing with the officer and [the Petitioner] made some statements about [the officer] needed to pick [the drugs] up so it's not a sell and delivery. So even though [the Petitioner] asserted he was trapped into the transaction it didn't exonerate him from a delivery [charge]. Technically under the statute that set of facts did not exonerate [the Petitioner] under a delivery theory.

Counsel testified that the fact that there were two drug transactions on separate days hurt the Petitioner's theory of defense that he was "accidentally" there for the drug transaction. As far as calling the informant as a witness at trial, Counsel stated that she based her decision on several theories of defense. One theory was that Counsel was able to illicit "whatever we wanted about the confidential informant through the cross-examination" of Officer Lovingood, who admitted in front of the jury that he did not know the informant and had not drug tested him. Counsel stated that she also wanted to "attempt to reduce [the Petitioner's] exposure" with the hope of getting a conviction for a lesser-included offense such as facilitation. Counsel stated that her third theory of defense was that she felt she could prove to the jury that the State did not prove their case and was not forthcoming in their prosecution by failing to produce the confidential informant as a witness. Counsel thus "dwelled on" the confidential informant "a lot" in front of the jury. She also requested a missing witness instruction. She agreed that it was a "strategy call" to not use the confidential informant as a witness as the Petitioner requested.

On cross-examination, Counsel testified that she learned "early on" that a confidential informant was involved in the case, and she had information that he was a "professional" confidential informant. Counsel agreed that she did not file a motion at trial requesting that the State disclose the confidential informant. Counsel stated it was "a strategy" to not call the confidential informant as a witness at trial. Counsel further stated that she did not seek the identity of the informant because "typically in [plea] negotiations with the District Attorney's Office" a plea deal will not be offered if the identity of the informant is revealed. She agreed that a plea offer to a twelve-year sentence was offered to the Petitioner, but the trial court rejected the plea agreement.

Counsel testified that she requested a "facilitation instruction" but that the trial court judge denied her request, ruling that the "proof wasn't sufficiently raised." Counsel agreed she did not raise a claim about the Drug Free School Zone Act violating the 8th Amendment, but she raised issues on appeal regarding sentencing and specifically the school zone enhancement of the Petitioner's sentence.

Based upon this testimony, the post-conviction court denied post-conviction relief. In its order, the post-conviction court found that the Petitioner was not a credible witness, noting the Petitioner's testimony that he was "high" during the drug transaction and also a "crack addict." The post-conviction court noted that the Petitioner testified inconsistently about the history of his case. The trial court further found that Counsel was a credible witness and noted the various strategies she utilized at the Petitioner's trial. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that Counsel's failure to file a motion to compel the identity of the confidential informant was deficient representation because the Petitioner had a "right to the disclosure" of the informant's identity at trial. The Petitioner further contends that Counsel's decision not to file the motion was not an informed decision based on adequate preparation. The State responds that the evidence supports the post-conviction court's finding that Counsel made an "informed and strategic decision" to not seek the confidential informant's identity because Counsel's testimony made it clear that her decision not to file the motion was part of a strategy to highlight the informant's absence in front of the jury. The State also responds that the burden was on the Petitioner to present the confidential informant as a witness at the post-conviction hearing, and his failure to do so prevented the post-conviction court, had it found Counsel's performance deficient, from determining what the confidential informant's testimony would have been. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual

10

issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.

Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In its order denying the Petitioner relief on this issue, the post-conviction court found that Counsel was a credible witness, noting that she made strategic and tactical choices throughout her preparation for the Petitioner's trial, and further noting that her testimony at the post-conviction hearing was corroborated by the testimony at trial. The post-conviction court found that Counsel "had a strategy, [was] a very experienced criminal defense attorney and her performance was not proven to be deficient or below objective standards of reasonableness." The post-conviction court found that the Petitioner's testimony was not credible.

The Petitioner cites *House v. State*, 44 S.W.3d 508 (Tenn. 2001), in support of his argument that the Petitioner had a "right to disclosure" of the informant's identity. The Court in *House* held that, while a defendant "*may* [have] a right to pretrial disclosure of the informant's identity," 44 S.W.3d at 515 (emphasis added), counsel in that case was ineffective because his decision not to seek disclosure of the informant was *not* a matter of strategy or part of a tactical decision. *Id.* at 516 (emphasis added). The Court also gave weight to the fact that counsel was uncertain about whether disclosure of the informant's identity was required. Thus, the Court held that counsel's performance was deficient. *Id.*

We conclude that the evidence does not preponderate against the post-conviction

12

court's findings. Counsel was not deficient in her representation of the Petitioner when she did not file a motion to compel the identity of the confidential informant. Counsel testified that such motions generally ended plea bargain negotiations and that the State had made a plea offer which she thought the Petitioner might accept. Counsel stated that her strategy was to focus on the absence of the confidential informant through her cross-examination of the police officer. Counsel recalled that she had several theories of defense that informed her decision not to file the motion, including her theory that the State would not be able to prove its case without presenting the informant's testimony, which would have led to an acquittal. We conclude that her decision was not indicative of deficient performance but of a multi-pronged defense strategy for the Petitioner's trial.

Counsel further testified about her trial strategies, saying that she attempted to shield the Petitioner from negative exposure in front of the jury and focused on the confidential informant's absence as a witness when cross-examining the police officer. Counsel requested, unsuccessfully, a missing witness instruction to further highlight the informant's absence. The Petitioner did not present the confidential informant as a witness at the post-conviction hearing. This is required for him to show Counsel's representation prejudiced him, as "this is the only way the [P]etitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the [P]etitioner." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The Petitioner has not shown by clear and convincing evidence that Counsel's decision not to file a motion to compel the informant's identity constituted representation that falls below the standard of reasonableness. Accordingly, we do not conclude that Counsel's representation fell below an objective standard of reasonableness. Thus, the Petitioner is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE